J-A07033-16

| | |
|---|---|
| MARIA HEDDLESTON AND BRIAN HEDDLESTON, HER HUSBAND<br><br>        Appellants<br><br>        v.<br><br>OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES OF PITTSBURGH INC. D/B/A/ OB/GYN ASSOCIATES OF PITTSBURGH, RENATA D. HOCA, M.D. PEDIATRIC ALLIANCE, P.C. D/B/A THE BREASTFEEDING CENTER OF PITTSBURGH, NANCY BRENT, M.D., MAGEE-WOMEN'S HOSPITAL-UPMC AND UPMC<br><br>        Appellees | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 443 WDA 2015 |

Appeal from the Judgment Entered March 2, 2015
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD12-10765

| | |
|---|---|
| MARIA HEDDLESTON AND BRIAN HEDDLESTON, HER HUSBAND<br><br>        Appellees<br><br>        v.<br><br>OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES OF PITTSBURGH INC. D/B/A/ OB/GYN ASSOCIATES OF PITTSBURGH, RENATA D. HOCA, M.D. PEDIATRIC ALLIANCE, P.C. D/B/A THE BREASTFEEDING CENTER OF PITTSBURGH, NANCY BRENT, M.D., MAGEE-WOMEN'S HOSPITAL-UPMC AND UPMC<br><br><br>APPEAL OF: PEDIATRIC ALLIANCE, P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |

D/B/A THE BREASTFEEDING
CENTER OF PITTSBURGH AND NANCY
BRENT, M.D.

No. 471 EDA 2015

Appeal from the Judgment Entered March 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD12-10765

_____

MARIA HEDDLESTON AND BRIAN
HEDDLESTON, HER HUSBAND

          Appellees

          v.

OBSTETRICAL AND GYNECOLOGICAL
ASSOCIATES OF PITTSBURGH INC.
D/B/A/ OB/GYN ASSOCIATES OF
PITTSBURGH, RENATA D. HOCA, M.D.
PEDIATRIC ALLIANCE, P.C. D/B/A THE
BREASTFEEDING CENTER OF
PITTSBURGH, NANCY BRENT, M.D.,
MAGEE-WOMEN'S HOSPITAL-UPMC AND
UPMC

APPEAL OF: OBSTETRICAL AND
GYNECOLOGICAL ASSOCIATES OF
PITTSBURGH INC. D/B/A OB/GYN
ASSOCIATES OF PITTSBURGH,
RENATA D. HOCA, M.D., MAGEE
WOMEN'S HOSPITAL-UPMC AND UPMC

IN THE SUPERIOR COURT
OF
PENNSYLVANIA

No. 490 EDA 2015

Appeal from the Judgment Entered March 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD12-10765

- 2 -

J-A07033-16

BEFORE: BOWES, J., MUNDY, J., and JENKINS, J.

CONCURRING AND DISSENTING MEMORANDUM BY JENKINS, J.:

**FILED JULY 22, 2016**

In my view, neither of the reasons given by the majority for granting Appellants a new trial warrants relief. Therefore, I respectfully dissent from the majority's analysis of these issues and its decision to grant a new trial to Appellants. I concur with the majority's disposition of the remaining issues.

The first reason provided by the majority for ordering a new trial is that the trial court erred by permitting defense counsel to cross-examine Wife with demonstrative exhibits depicting certain warning signs and symptoms for breast cancer. Appellants argued that defense counsel obtained diagrams from a website belonging to the Susan G. Komen Charity, removed the website's copyright insignia from the diagrams, and misrepresented that his own office created the diagrams. The diagrams were inadmissible, Appellants said, because they were hearsay and because Wife, a lay witness, was not qualified to authenticate them. I agree that the trial court erred by permitting defense counsel to cross-examine Wife with the diagrams, but I conclude that this error was harmless.

We review evidentiary rulings for abuse of discretion. *Zieber v. Bogert*, 773 A.2d 758, 760 n.3 (Pa.2001). A ruling on evidence does not constitute reversible error unless it is harmful or prejudicial to the

complaining party. *Yenchi v. Ameriprise Financial, Inc.*, 123 A.3d 1071, 1082 (Pa.Super.2015).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). The purpose of demonstrative evidence is to "render[] other evidence more comprehensible for the trier of fact." *Kopytin v. Aschinger*, 947 A.2d 739, 747 (Pa.Super.2008). "As in the admission of other evidence, a trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect." *Id*. "Demonstrative evidence may be authenticated by testimony from a witness who has knowledge that a matter is what it claimed to be." *Id.* (citing Pa.R.E. 901(b)(1)).

The crux of this case was whether Appellees failed to diagnose and treat Wife despite warning signs of cancer. Obviously, the exhibits from the Susan G. Komen website depicting warning signs and symptoms of cancer were relevant to this question. On the other hand, Appellants are correct that the diagrams were hearsay, and that Wife was not qualified to authenticate them as a layperson.

Despite these errors in form, I respectfully disagree with the majority that Appellants suffered prejudice from the use of these diagrams. The majority acknowledges that the diagrams would be admissible "if a qualified medical expert … opined that the signs and symptoms enumerated on the

slides were generally accepted and fairly depicted on the slides." Memorandum, at 9. That is exactly what happened here. Both Appellees and the trial court point out that the diagrams' representation of the signs and symptoms of breast cancer is consistent with the testimony of Appellants' causation expert, Dr. Singer. Pa.R.A.P. 1925(a) Opinion, at 5 ("Dr. Singer agreed with the signs and symptoms of breast cancer as displayed on the diagrams"); Brief For OB/GYN Associates of Pittsburgh, et al, at 40-41. Appellants do not disagree in their briefing that Dr. Singer's testimony was consistent with the diagrams. Thus, any error was harmless.

As a second reason for ordering a new trial, the majority asserts that the trial court improperly cut off Dr. Singer's testimony. To elaborate, Appellees filed a motion in limine to preclude Dr. Singer from offering standard of care testimony. In response, Appellants' counsel stated that Dr. Singer would not opine on the standard of care but would only testify about what a diagnostic test should have shown had it been performed "at that time." R.R. 794a. Defense counsel said that he had no problem with this question. R.R. 795a. Later, Appellants' counsel asked Dr. Singer this very question: "Doctor, had diagnostic imaging been ordered in September or October 2009, would it have revealed the tumor?" R.R. 1056a. Dr. Singer testified: "In my opinion, as an oncologist, yes. Because even though she was stage IV one year later, I do believe that the cancer was present back in 2009. It wasn't palpable, obviously, then because her breasts were

engorged. And studies such as an ultrasound or MRI would be able to …" *Id*. At that moment, defense counsel objected on the ground that Dr. Singer was giving standard of care testimony: "This is backdooring standard of care testimony. If you did these tests, what would they have shown? Suggesting these tests should have been done … is standard of care testimony." R.R. 1057a. The court sustained defense counsel's objection on the ground that "we're talking standard of care here, so it's out." R.R. 1058a. Appellants claim that defense counsel profited from this ruling by arguing during his summation that it would be inappropriate to hold Appellees liable for failing to order diagnostic imaging, because Appellants failed to demonstrate what imaging would have shown.

In my view, the trial court's ruling was improper. The purpose of expert testimony on the standard of care is to demonstrate the steps that Appellees should have taken. The purpose of expert testimony on causation is to demonstrate *what would have happened* had Appellees taken certain steps, but without opining whether Appellees *should have taken* these steps. Dr. Singer's answer fell into the latter category – had diagnostic imaging been performed in 2009, he said, it would have revealed cancer because cancer was present at that time. The trial court erred by ruling that the final, truncated sentence of Dr. Singer's answer constituted standard of care testimony. All that Dr. Singer seemed poised to say was a causation opinion

that an ultrasound or MRI in 2009 *would have* revealed cancer, not a standard of care opinion that these tests *should have* been performed.

Nevertheless, I do not believe that the trial court's ruling prejudiced Appellants. The majority seems to believe that the trial court excluded Dr. Singer's entire answer, thus preventing Appellants from proving causation. In my view, the trial court's ruling did not prevent Appellants from proving causation. The court merely excluded the final truncated sentence, "and studies such as an ultrasound or MRI would be able to …" The court did not exclude the first three sentences of Dr. Singer's answer, which presented a coherent theory of causation to the jury: had diagnostic imaging been performed in 2009, it would have revealed cancer. As a result, Appellants were able to present a complete theory of malpractice to the jury. Appellants elicited standard of care testimony from Robert Hecht, M.D. that Appellees were negligent for failing to order diagnostic imaging in 2009[1] and causation testimony from Dr. Singer that diagnostic imaging would have revealed Wife's cancer in 2009.[2]

_____

[1] Trial Transcript, Day 2, at 195 (Dr. Hecht's testimony that when Wife presented with severe pain, defendants "should have ordered diagnostic testing"), 203 (when Wife presented with severe pain, Dr. Hoca should have "ordered diagnostic imaging"), 206 (Dr. Hoca violated the standard of care by not ordering any sort of diagnostic imaging to evaluate [Wife's] breast problem").

[2] The fact that the court permitted Appellants' case to go to the jury supports my interpretation of the evidence. Had the court excluded Dr.

*(Footnote Continued Next Page)*

It is our duty to affirm the trial court's decision if it can be justified on any basis. **Commonwealth v. Judge**, 916 A.2d 511, 517 n.11 (Pa.2007). For the reasons given above, I conclude that both of the trial court's rulings were harmless errors. Accordingly, I respectfully dissent from the majority's decision to grant Appellants a new trial.

_(Footnote Continued)_ —————————————

Singer's entire answer and thus excluded all causation testimony, Appellees' attorneys no doubt would have obtained a directed verdict at the close of evidence.