J-A35013-15

2016 PA Super 35

| | |
|---|---|
| MARGARET M. DIBISH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY, AND JEFFREY C. SUHAYDA, | |
| Appellees | No. 70 WDA 2015 |

Appeal from the Judgment Entered December 9, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD 01-007242

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

OPINION BY BENDER, P.J.E.: **FILED FEBRUARY 16, 2016**

Margaret M. Dibish appeals from the judgment entered December 9, 2014, following a trial during which she pursued claims of fraudulent and negligent misrepresentation, as well as violations of the Unfair Trade Practices Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1 – 201-9.3. Appellant was awarded $10,000.00 in damages, $25,000.00 in attorney fees, and $726.37 in costs. We affirm in part, reverse in part, vacate the judgment entered and remand.

In August 2000, Appellant and her husband met with Mr. Jeffrey Suhayda, an agent and representative of Ameriprise and IDS Life Insurance

Company (IDS), to discuss their financial goals.[1]  At the time, Appellant maintained two, whole life insurance policies with Prudential, with a combined $30,000 benefit.  The annual premiums for these policies totaled $701.  Mr. Suhayda recommended that Appellant cash-surrender these policies and use the proceeds to help finance the purchase of a new, flexible premium, variable universal life policy.  According to Mr. Suhayda, Appellant could maintain a $50,000 policy from Appellees, for the rest of her life, for $715.56 annually.

As described by Mr. Suhayda, the new policy would be supported by various investment subaccounts selected by the insured, including stocks, bonds, mutual funds, and a cash savings account bearing a fixed rate of interest.  The insured could adjust the amount invested in these subaccounts, depending on investment goals and performance.  The insured could also adjust premium payments and the death benefit.  Mr. Suhayda presented performance projections suggesting how the policy could grow in value.  However, he also explained that he would need to run projections on Appellant's policy annually to evaluate performance and, further, that an increase in premium payments may be required.

Appellant accepted Mr. Suhayda's recommendation and purchased a policy with a $50,000 death benefit.  Despite Mr. Suhayda's description of

---

[1] During the course of this litigation, IDS became known as RiverSource Life Insurance Company.

her policy, Appellant believed that her annual premium for the new policy would be $715.56 and that her premium payments would guarantee a $50,000 death benefit until age ninety-nine. However, Appellant learned thereafter that the payments were insufficient to do so. To the contrary, as Appellant lived beyond her life expectancy, and the underlying cost of her insurance increased, Appellant could be forced to either pay additional premiums or reduce the policy death benefit. In order to guarantee a $50,000 benefit until age ninety-nine, Appellant would need to pay the so-called "Guideline Level Premium" of $1,360.29 annually, considerably more than the $715.56 premium promised her.

In April 2001, Appellant commenced this litigation by writ of summons. Appellant filed a complaint in October 2004, and an amended complaint in May 2014, alleging (1) negligent misrepresentation; (2) fraudulent misrepresentation; (3) violation of the UTPCPL; (4) bad faith; (5) breach of fiduciary duty; and (6) negligent supervision. In May 2014, the trial court granted Appellees' motion for summary judgment as to counts 4, 5, and 6. **See** Order of Court, 05/02/2015. Trial then proceeded on the remaining claims.

Regarding damages, the parties presented competing models of compensation.[2] Appellant suggested that her damages could be calculated simply by multiplying the difference in premium amounts by the number of years the policy would be in force.[3] Appellees disputed this formula, asserting that it was based upon worst-case investment performance projections and costs that had never materialized, and countered with a more detailed analysis. According to Appellees, based upon Appellant's assertions, the proper measure of damages should be calculated by subtracting Appellant's expected premium payments and her initial investment from the expected policy death benefit. Appellees also suggested that Appellant's expected premium payments should extend from policy inception through her life expectancy of age eighty-three. Finally, as these payments were fixed into the future and not subject to inflation, Appellees reduced these damages to their present value.[4]

---

[2] Appellees did not concede liability but provided expert testimony on damages in the alternative.

[3] Based upon Appellant's age, the policy could remain in force 45 years. Therefore, Appellant suggested the following formula:

($1,360.29 - $715.26) x 45 years = $29,012.85

[4] Based on their analysis, Appellees suggested damages of $7,132. For a discussion of the present value of future damages, **see Helpin v. Trs. of the Univ. of Pa.**, 10 A.3d 267, 270-77 (Pa. 2010).

Following trial, a jury returned a mixed verdict. The jury found in favor of Appellant on her claim of negligent misrepresentation but for Appellees on the claim of fraud. The jury awarded Appellant $5,000.00 in damages, seemingly rejecting both damages models suggested by the litigants. The UTPCPL claim was submitted to the trial judge, who found for the Appellant. The court also determined Appellant's actual damages to be $5,000, then doubled the award to $10,000.00, pursuant to 73 P.S. § 201-9.2. The court also granted Appellant's motion for attorney fees and costs, awarding $25,000.00 in attorney fees and $726.37 in costs.

Appellant filed post-trial motions, which were denied. Thereafter, the trial court entered judgment on the non-jury verdict.[5] Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued responsive opinions. *See* Trial Court Opinion, 12/09/2014 (Hertzberg, J.); Trial Court Rule 1925(a) Memorandum, 04/30/2015 (Wettick, J.).

Appellant raises numerous issues, paraphrased as follows:

1. Whether the trial court erred as a matter of law by granting summary judgment to Appellees on Appellant's claim for breach of fiduciary duty;

---

[5] The trial court declined to enter judgment on the jury verdict. According to the trial court, "[s]ince the jury and non-jury verdicts result from the same conduct of the [Appellees], I find the damages to be duplicative and select the larger verdict, the $10,000 non-jury verdict, as the single verdict for this proceeding." Trial Court Order, 12/09/2014, at 2. Appellant does not dispute this aspect of the judgment.

2.    Whether the court erred as a matter of law, or otherwise abused its discretion, regarding its award of actual damages to Appellant;

3.    Whether the court abused its discretion, as it declined to award treble damages under the UTPCPL;

4.    Whether the court abused its discretion in its award of attorney fees;

5.    Whether the court abused its discretion regarding its "damages" instruction to the jury, as it suggested the jury could reduce a lump-sum award of future damages to present value;

6.    Whether the court abused its discretion, as it permitted Appellees' damages expert to present a model of damages that failed to compensate Appellant for the difference in price between the policy that was promised and the policy that was issued and that reduced a lump-sum award to present value;

7.    Whether the court abused its discretion regarding its "justifiable reliance" instruction to the jury; and

8.    Whether the court erred in denying Appellant's motion to compel discovery related to company-wide financial planning and insurance sales practices.

*See* Appellant's Brief at 5-7.

In her first issue, Appellant contends that the trial court erred when it granted Appellees' motion for summary judgment and dismissed Appellant's claim for breach of fiduciary duty.

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the

moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the fact-finder. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*DeArmitt v. N.Y. Life Ins. Co.*, 73 A.3d 578, 585-586 (Pa. Super. 2013) (internal citations and quotation marks omitted; some punctuation modified).

Appellant notes that a party incurs fiduciary responsibilities toward another where there exists a confidential relationship between them, citing in support *Brooks v. Conston*, 51 A.2d 684 (Pa. 1947). Moreover, according to Appellant, whether a confidential relationship exists presents a question of fact, not readily answered by an inflexible rule of law. *See Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 578 (Pa. Super. 2006). Finally, Appellant concludes, the trial court failed to consider evidence sufficient to establish that Mr. Suhayda cultivated a confidential relationship with her and her husband.

We need not address Appellant's argument in detail. Integral to the trial court's decision was Appellant's purchase of a life insurance policy from Mr. Suhayda. According to the trial court, "the relationship between the

seller of insurance and the purchaser of insurance should not be characterized as a fiduciary relationship." Trial Court Rule 1925(a) Memorandum at 2 (rejecting an entire category of commercial relationships, as a matter of law, and citing in support its prior decisions, *e.g.*, **Ihnat v. Pover**, 1999 WL 34788321 (Pa. Com. Pl. Feb. 1, 1999) (Wettick, J.)). Recently, we rejected this exclusionary rule, as the existence of a confidential relationship requires a fact-sensitive inquiry, which may not be rigidly disposed of as a matter of law. **Yenchi v. Ameriprise, Fin, Inc.**, 123 A.3d 1071, 1080 (Pa. Super. 2015). Accordingly, we reverse the trial court on this ground.[6]

In her second issue, Appellant contends the trial court erred in its damages award. Damages under the UTPCPL are governed by the following provision:

_____

[6] We reject Appellees' call for waiver of this issue. In the brief supporting their motion for summary judgment, Appellees moved for dismissal of Appellant's breach of fiduciary duty claim based on previous rulings of the trial court. **See** Appellees' Memorandum of Law, 05/08/2013, at 10 (expressly citing **Ihnat v. Pover**, GD-94-17465, and **Yenchi v. Ameriprise Fin., Inc.**, GD-01-006610). In her response, Appellant conceded that "[b]ased upon this court's prior rulings, … the facts of the case fail to support the [b]reach of [f]iduciary [d]uty claim." Appellant's Memorandum of Law, 07/03/2013, at 17. Although no analysis accompanied the trial court's initial order dismissing Appellant's breach of fiduciary duty claim, its subsequent memorandum relies on its previous rulings expressly. Thus, Appellant's concession that the current did not support her claim does not constitute waiver.

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a) (footnote omitted). Thus, to recover damages, a plaintiff must establish "an ascertainable loss *as a result of* the defendant's prohibited action." **Boehm v. Riversource Life Ins. Co.**, 117 A.3d 308, 328 (Pa. Super. 2015) (quoting **Weinberg v. Sun Co., Inc.**, 777 A.2d 442, 446 (Pa. Super. 2001) (emphasis in original)); **DeArmitt**, 73 A.3d at 593. A plaintiff is then entitled to recover "actual damages." 73 P.S. § 201–9.2(a).

According to Appellant, the court was required to compensate her, at a minimum, for the "difference in value between what [she] bargained for and what [she] received." Appellant's Brief at 38 (citing in support **Boehm**, 117 A.3d at 308). Based upon this premise, Appellant asserts that her damages model relied upon "the exact same approach and methodology" accepted in previous, similar cases. **Id.** at 38 (citing in support **Boehm**; **Lesoon v. Metropolitan Life Ins. Co.**, 898 A.2d 620, 628 (Pa. Super. 2006), *appeal denied*, 912 A.2d 1293 (Pa. 2006); and **Agliori v. Metropolitan Life Ins. Co.**, 879 A.2d 315 (Pa. Super. 2005)). Thus, Appellant concludes, we must

vacate the judgment entered and remand. We decline to do so for the following reasons.

Appellant purports to raise a question of law, asserting that her damages model is singularly appropriate. Thus, Appellant suggests our review is *de novo*. **See** Appellant's Brief at 1 (citing **In re Novosieski**, 992 A.2d 89, 99 (Pa. 2010) (interpreting, as a matter of law, certain provisions of the Pennsylvania Multiple-Party Accounts Act, 20 Pa.C.S. §§ 6301-6306)). However, Appellant is incorrect, and her reliance upon those cases cited favorably in her argument is misleading. As made clear in those cases, the UTPCPL does not define "actual damages," nor has a Pennsylvania appellate court endeavored to do so. Rather, we have focused on certain principles necessary to affect the remedial purpose of the UTPCPL and repeatedly left the calculation of actual damages to our trial courts, deferring to their fact-finding expertise.[7]

For example, in **Agliori**, the plaintiff brought a claim under the UTPCPL, broadly alleging misrepresentations by a life insurance agent that

---

[7] We note further that Appellant's argument, suggesting the trial court was obliged to review evidence of her damages "in the light most favorable" to her as the "verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence," misstates the law. **See** Appellant's Brief at 47-48 (quoting **Buckley v. Exodus Transit & Storage Corp.**, 744 A.2d 298, 304-05 (Pa. Super. 1999) (reviewing a trial court's denial of the appellant's/plaintiff's motion for judgment notwithstanding the defense verdict)). We admonish Appellant to strive for greater precision in her presentation. **See also Yenchi**, 123 A.3d at 1080 n.6.

induced the plaintiff to surrender his existing, whole life policies and purchase a new, universal life policy. *Agliori*, 879 A.2d at 317. Following a bench trial, the trial court found a UTPCPL violation but declined to award damages, because it did not find any ascertainable loss of money or property. *Id.* at 317-18.

> The [trial] court determined that Mr. Donahue had entered into the transaction to purchase $40,000 of life insurance coverage for $600 per year plus the surrender value of his whole life policies. Because Mr. Donahue never paid more than $600 per year for the insurance and his estate received $40,000 plus interest upon his death, the court found that Mr. Donahue received the policy that he wished to purchase and therefore did not suffer any loss.

*Id.* at 318.[8]

On appeal in *Agliori*, the issue before this Court was whether the plaintiff had "suffered an 'ascertainable loss' within the meaning of the UTPCPL." *Id.* at 320. We observed that the plaintiff's evidence suggested that, if plaintiff had maintained his previous policies instead of purchasing a new one from the defendants, then at the time of his death, the plaintiff would have received a greater benefit.[9] *Id.* at 321. Upon proper examination of "*all* the policies that constituted the transaction," we suggested the court could find an ascertainable loss. *Id.* (emphasis in

---

[8] Following the plaintiff's death, the claim was maintained by his estate. *Id.* at 317 n.3.

[9] The plaintiff introduced evidence suggesting that the value of his whole life policies would have been $47,000. *Id.* at 318.

original). Thus, we remanded for further consideration of the facts presented and a determination of the appropriate damages. *Id.* at 322.

In reaching this conclusion, we stressed that the purpose of the UTPCPL was "to prevent and deter fraud." *Id.* at 320. However, at no point in our analysis did we mandate the appropriate manner of calculating damages. Quite to the contrary, we stated unequivocally that "[t]he UTPCPL does not provide a formula for calculation of 'actual damages,' and, as noted recently by the Third Circuit Court, the Pennsylvania Supreme Court has not to date interpreted this statutory term." *Id.* at 319 (citing ***Samuel-Bassett v. KIA Motors Am., Inc.***, 357 F.3d 392, 399 (3d Cir. 2004)). We also recognized that "our case law has sanctioned the application of several damage assessment schemes under the UTPCPL." *Id.* at 319 (thereafter discussing several cases).

There is no issue before the Court in this case whether Appellant suffered an ascertainable loss. Though Appellees challenged liability at trial, they have elected not to appeal the judgment in this case. Clearly, the trial court here determined that Appellant had suffered an ascertainable loss and awarded damages. Moreover, ***Agliori*** has little in common with the factual background in this case, apart from the obvious similarities that both cases involve deceptive conduct and the sale of a life insurance policy. For our purposes, ***Agliori*** serves only to stress the remedial goals of the UTPCPL and our liberal construction of its provisions. *Id.* at 318.

Appellant also cites this Court's decision in **Lesoon**. In that case, the plaintiffs maintained two, life insurance policies, valued at $5,000 and $10,000. **Lesoon**, 898 A.2d at 622. Following a meeting with the defendant's agent, the plaintiffs agreed to purchase a new, $50,000 policy for $18.00 per month. The plaintiffs purchased the new policy believing that the two, pre-existing policies would remain unchanged. **Id.** at 623. The plaintiffs also declined to enroll in the defendant's automatic payment program. **Id.** Thereafter, the plaintiffs discovered that one of their pre-existing policies had been altered without their permission and that someone had forged one plaintiff's signature, thus enrolling the plaintiffs in the automatic payment program. **Id.**

When the plaintiffs confronted the defendant, the defendant rescinded the transaction, restored all moneys automatically deducted from their checking account, and reinstated their pre-existing policy to its original form. **Id.** at 624. Nevertheless, the plaintiffs filed a complaint alleging fraud and a UTPCPL violation. Following a bench trial, the trial court found in plaintiffs' favor on both claims but awarded $100.00 in damages,[10] concluding that the plaintiffs had not suffered any actual damages. **Id.** at 625.

---

[10] $100.00 is the minimum award under the UTPCPL. **See** 73 P.S. § 201-9.2.

- 13 -

On appeal in *Lesoon*, we vacated the judgment and remanded so the trial court could reassess its damages award. *Id.* at 633. We commenced our analysis recognizing that "appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence." *Id.* at 628. Nevertheless, we specifically rejected the trial court's conclusion that, because the defendant had returned the plaintiffs to their original position, its post-fraud rescission was a sufficient remedy, and we concluded that the record did not support the trial court's determination that the plaintiffs had presented no evidence of an ascertainable loss. *Id.* at 632. At a minimum, we concluded, the plaintiffs had lost the benefit of their bargain, because the insurance policy issued was more expensive than the policy promised them. *Id.* at 633. Thus, we agreed that the plaintiffs were "entitled to the benefit of the contract that was promised." *Id.* at 631.

The *Lesoon* decision offers further guidance on how a trial court may evaluate whether a UTPCPL plaintiff has suffered an ascertainable loss. Moreover, unlike in *Agliori*, the issue of damages was squarely before the Court in *Lesoon*. However, we rejected the opportunity to define actual damages under the UTPCPL and expressly declined to adopt the plaintiffs' calculation of damages, stressing that "the duty of assessing damages is for

the trier of fact, and *we will not usurp that function*." **Id.** (emphasis added).[11]

Finally, in **Boehm**, an insured brought claims of fraudulent misrepresentation in connection with the sale of a life insurance policy. **Boehm**, 117 A.3d at 313. Although the plaintiffs' common law claims were denied, following a bench trial on their UTPCPL claims, the trial court found that the defendants had "purposely and intentionally misrepresented the terms of the policy." **Id.** at 314. Significantly, the trial court credited the plaintiffs' evidence expressly and "explicitly found that [the defendants'] experts on damages did not offer credible testimony." **Id.** at 332; **see also id.** at 314-19 (quoting the plaintiffs' proposed findings of fact in their entirety and noting their adoption by the trial court). In awarding damages, the trial court accepted the plaintiffs' model, awarding nearly the full measure of the plaintiffs' request. **Id.** at 319, 328.[12]

On appeal, we again stressed the deterrence function of the statute but recognized that an ascertainable loss must be established by the facts of

_____

[11] According to the plaintiffs in **Lesoon**, they were entitled to receive "the sum of $531 multiplied by the life of the fifty-six year policy, or $29,736." **Id.** at 632-33. The **Lesoon** decision does not identify from where the proposed $531 amount in annual relief originates. Further, there is no indication what damages were eventually awarded.

[12] The plaintiffs had requested $135,960; the trial court awarded $125,000 in actual damages.

the case. *Id.* at 329 (quoting *DeArmitt*, 73 A.3d at 593-94; *Agliori*, 879 A.2d at 321). Regarding damages, we noted the following:

> The determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. Although the fact[-]finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Id.* at 328 (quoting *Penn Elec. Supply Co., Inc. v. Billows Elec. Supply Co., Inc.*, 528 A.2d 643, 644 (Pa. Super. 1987) (internal citations omitted)); *see also DeArmitt*, 73 A.3d at 593. Thus, we reiterated that "[t]he duty of assessing damages is for the fact-finder" and that "appellate courts should give deference to the decisions of the trier of fact." *Boehm*, 117 A.3d at 328 (quoting *Lesoon*, 898 A.2d at 628).

Importantly, *based upon the facts accepted by the trial court*, we deferred to the trial court's formulation of damages. We did not mandate any particular method of calculating actual damages; we merely discerned no abuse of discretion. *Boehm*, 117 A.3d at 332-33.

We summarize the preceding precedents as follows. In order to recover damages under the UTPCPL, a plaintiff must demonstrate an ascertainable loss as a result of the defendant's prohibited action. *Weinberg*; *Boehm*; *DeArmitt*. The trier of fact must examine the entire factual circumstances of a case to determine whether the plaintiff has

succeeded in demonstrating an ascertainable loss. *Agliori*. If so, the fact-finder may award actual damages. Though no precise definition of actual damages currently prevails, it is clear that a successful plaintiff is entitled to the benefit of her bargain. *Lesoon*. Therefore, the fact-finder must consider the precise benefit expected. *Boehm*; *Lesoon*. It is also clear that there must remain certain flexibility in calculating actual damages, as they are dependent upon the evidence accepted and found persuasive by a fact-finder. *Boehm*; *DeArmitt*; *Agliori*.

To be clear, none of the cases cited by Appellant have mandated a particular method of calculating actual damages. *Boehm*; *Lesoon*; *Agliori*. Moreover, we discern no authority empowering this Court to dictate which facts must be accepted by the fact-finder when considering those damages due a successful plaintiff. *Boehm*; *Lesoon*; *Agliori*. Provided a trial court adheres to the basic principles outlined above, and absent further guidance from the Legislature or our Supreme Court, we will continue to afford deference to the damages decisions of the fact-finder.

Here, the trial court adhered to these principles, and thus we discern no legal error. The court concluded that Mr. Suhayda had secured Appellant's purchase of a life insurance policy through deceptive means, thus violating the UTPCPL. *See* Non-Jury Verdict, 06/17/2014. The court recognized that Appellant had suffered an ascertainable loss as a result of this prohibited conduct. *Id.*; *see also* Trial Court Opinion at 2, 6-8.

- 17 -

In examining the evidence of damages, the trial court acknowledged that calculating Appellant's actual damages with precision was difficult because of the underlying flexibility in policy investments, the scheduled premiums, and the death benefit. Trial Court Opinion at 6-7 (asserting its damage estimate was reasonable based on the evidence and citing in support **Penn Elec. Supply Co., Inc.**, 528 A.2d at 644). Nevertheless, the court sought to insure that Appellant would receive the benefit of her bargain, namely a $50,000 death benefit, secured beyond her life expectancy, for a fixed, annual premium of $715.56. **See** Trial Court Opinion at 8.

The trial court considered and expressly rejected Appellant's evidence of damages and, though with less specificity, similarly rejected the damages model suggested by Appellees. **See** Trial Court Opinion at 6-8. *It was free to do so.* **Boehm**; **DeArmitt**; **Agliori**. In rejecting Appellant's evidence, the court identified two areas of concern. First, the court found no evidence to support Appellant's suggestion that she would live fifteen years beyond her life expectancy.[13] Trial Court Opinion at 7. The court also found "inappropriate" Appellant's premise that "actual damages" should be

_____

[13] We infer from the trial court's opinion that the court sought a middle ground in securing Appellant's policy to age ninety-one. Essentially, this splits the difference between Appellant's calculations through age ninety-nine and Appellees' calculations through appellant's life expectancy of eighty-three. We discern no abuse of discretion in this regard. **Boehm**, 117 A.3d at 328.

calculated using the so-called "Guideline Level Premium," a premium level designed to maximize the underlying cash value of a policy. *Id.* at 7. As noted by the trial court, Appellant's policy goal was not to maximize the liquid, cash value of the policy but rather to secure financial security for her beneficiary. *Id.* Moreover, the court recognized that Appellant had never deviated from her underlying investment strategy, with policy subaccounts invested in stocks, bonds, and mutual funds. *Id.* at 8. We defer to these findings, as they are supported by the record.

The court's calculation considered the current value of Appellant's policy, assumed a reasonable rate of investment growth in Appellant's policy subaccounts, and factored in Appellant's fixed premium and the increasing cost of insurance. Based on these considerations, the trial court concluded that an additional $5,000 would ensure Appellant a $50,000 benefit until she reaches age ninety-one. The court concluded that this was a reasonable estimate of Appellant's actual damages, and we discern no abuse of discretion.[14] Accordingly, the trial court's judgment of $5,000 actual damages is affirmed.

---

[14] Notably, Appellant does not challenge the calculations of the trial court, with one exception. On appeal, Appellant attacks the court's assumption of a 6% rate of growth in Appellant's investment subaccounts. According to Appellant, the fluctuation in the rate of return on Appellant's investments renders any estimate too speculative. *See* Appellant's Brief at 50-55. However, at trial, Appellant introduced no evidence relating to the performance of these accounts, and her attempt to introduce evidence now
*(Footnote Continued Next Page)*

In her third issue, Appellant contends the trial court abused its discretion when it declined to award treble damages under the UTPCPL. According to Appellant, the trial court failed to properly consider the evidence of Appellees' prohibited conduct and, absent treble damages, "the deterrence value of the UTPCPL is weakened, if not lost entirely." **See** Appellant's Brief at 61 (quoting **Boehm**, 117 A.3d at 329).

Appellant's argument is devoid of merit. The UTPCPL affords the trial court discretion to "award *up to three times* the actual damages sustained." 73 P.S. § 201-9.2(a) (emphasis added). Thus, there is no obligation for a trial court to award treble damages. Indeed, and quite to the contrary of Appellant's position, our Supreme Court has recognized that trial courts' discretion to award treble damages must be tempered by the facts demonstrated.

> [T]he discretion of courts of original jurisdiction is not limitless, as we believe that awards of treble damages may be reviewed by the appellate courts for rationality, akin to appellate review of the discretionary aspect of equitable awards, as previously discussed. Centrally, courts of original jurisdiction should focus

*(Footnote Continued)* ─────────────

is inappropriate. **See** Appellant's Brief at 52-54 (attempting to demonstrate, with fluctuating returns over a short, 3-year period, that an average rate of return can produce different investment results). In contrast, the evidence introduced by Appellees established that the value of these investment subaccounts had doubled since inception, at one point reaching a 20% growth rate. The trial court made a reasonable estimate based upon the evidence before it. **Boehm**, 117 A.3d at 328 (permitting a measure of speculation in estimating damages based upon the evidence). Accordingly, we discern no abuse of discretion in the trial court's estimate of future investment growth.

on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL.

***Schwartz v. Rockey***, 932 A.2d 885, 898 (Pa. 2007).

Here, the trial court expressly found that Appellees' "misrepresentation was made negligently, *but not recklessly or intentionally*." Trial Court Opinion at 9 (emphasis added); ***see also*** Non-Jury Verdict, 06/17/2014. The court concluded that doubling Appellant's actual damages was consistent with the ***Schwartz*** analysis. Trial Court Opinion at 9. We agree and, therefore, discern no abuse of the trial court's discretion.[15]

---

[15] We note further that Appellant's reliance upon ***Boehm*** is again misleading. The full quote from ***Boehm*** is as follows:

Decisions by our Supreme Court and this Court have stressed time and again the deterrence function of the statute. If the court permits the appellee-defendants simply to repay what is owed the consumer under the fraudulently induced contract, *the deterrence value of the [UTPCPL] is weakened, if not lost entirely*. We cannot accept such an evisceration of the statutory goals.

***Boehm***, 117 A.3d at 329 (emphasis added) (quoting ***Agliori***, 879 A.2d at 321-22). In context, the ***Agliori*** Court was not suggesting that treble damages were necessary to strengthen the deterrence value of the UTPCPL but explaining our generally liberal approach to determining actual damages. The court thereafter concluded as follows:

We therefore remand to the trial court for determination of Mr. Donahue's ascertainable loss and the appropriate damages. *Appellants seek treble damages, but we decline to rule on that issue. The imposition of treble damages is within the discretion of the trial court, to be determined on remand*.

***Id.*** at 322 (emphasis added).
*(Footnote Continued Next Page)*

- 21 -

In her fourth issue, Appellant contends that the trial court abused its discretion when it declined to award the full measure of her requested attorney fees. Following the trial court's non-jury verdict, Appellant filed a petition requesting fees in the amount of $75,971. *See* Petition for the Award of Counsel Fees, 07/29/2014, at 13. In support of her request, Appellant suggested an hourly rate of $400 for Attorney Kenneth R. Behrend. *Id.* at Exihibit 1. However, the trial court rejected this rate, reducing it to $350 per hour. Trial Court Order, 12/09/2014, at 2 (unnumbered); Trial Court Opinion at 11, 13 (noting that the court also reduced the hourly rate of Attorney Behrend's "second chair"). The court further reduced certain line item fees due to a lack of evidentiary support and made a general reduction to reflect the amount involved in the controversy. Trial Court Order, 12/09/2014, at 1-2 (unnumbered) (citing in support *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022 (Pa. Super. 2005), *appeal denied*, 882 A.2d 1022 (Pa. 2006)); Trial Court Opinion at 9-14.

The UTPCPL provides that the trial court "*may award* to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees." 73 P.S. § 201-9.2 (emphasis added). An award is not

_(Footnote Continued)_ ───────────

In addition, though Appellant suggests that the facts of this case are similarly egregious as in **Boehm**, *see* Appellant's Brief at 60-61, and therefore warrant treble damages, *id.*, we observe that treble damages *were not awarded* in **Boehm**. *See Boehm*, 117 A.3d at 319, 328.

mandatory. *Id.*; *see also Krebs v. United Ref. Co. of Pa.*, 893 A.2d 776, 786 (Pa. Super. 2006) (interpreting the use of the word "may" in a similar provision of the Pennsylvania Storage Tank and Spill Prevention Act, 35 P.S. § 6021.1305(f) and concluding that an award "rests within the sound discretion of the trial court"). Nevertheless,

> the fee-shifting statutory provision of the UTPCPL is designed to promote its purpose of punishing and deterring unfair and deceptive business practices and to encourage experienced attorneys to litigate such cases, even where recovery is uncertain.

*Boehm*, 117 A.3d at 336 (citing *Krebs*, 893 A.2d 776, 788 (Pa. Super. 2006)).[16] Thus, a court should consider these purposes when deciding whether to award attorney fees. *Id.*

The following factors should be considered when assessing the reasonableness of attorney fees under the UTPCPL:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and

---

[16] To be clear, our Supreme Court suggested that the purpose of a remedial statute must be considered when a trial court evaluates *whether* to award fees. *Krebs*, 893 A.2d at 788. The purpose does not impact the amount of an award, which must be reasonable. *Id.* (noting that a departure from the "American Rule," where each party is responsible for their own attorney fees, indicates that "the trial court's discretionary award or denial … must be made in a manner consistent with the aims and purposes of that statute"); *but cf. Boehm*, 117 A.3d at 337 (citing *Krebs* in response to the appellant's argument that the trial court's award of attorney fees was excessive compared to a contingency fee arrangement).

the benefits resulting to the clients from the services; and (4) The contingency or certainty of the compensation.

**Boehm**, 117 A.3d at 335 (quoting **Sewak v. Lockhart**, 699 A.2d 755, 762 (Pa. Super. 1997)); **see also Neal**, 882 A.2d at 1030-31. Notably, "there should be a sense of proportionality between an award of damages [under the UTPCPL] and an award of [attorney] fees." **Boehm**, 117 A.3d at 335 (quoting **McCauslin v. Reliance Fin. Co.**, 751 A.2d 683, 685-86 (Pa. Super. 2000)); **Ambrose v. Citizens Nat. Bank of Evans City**, 5 A.3d 413, 423 (Pa. Super. 2010) (distinguishing **Neal** on other grounds, but citing it favorably for its recognition that "the amount of compensatory damages is one of several considerations when assessing the reasonableness of an attorney['s] fee request"). We review a trial court's assessment of attorney fees for an abuse of discretion. **Boehm**, 117 A.3d at 335 (citing **Neal**, 882 A.2d at 1029).

Appellant raises several arguments in support of her contention. According to Appellant, the trial court was required to accept counsel's requested hourly rate because the trial court in **Boehm** had approved the same rate, under similar circumstances. Appellant's Brief at 64-66 (referencing the decision in **Boehm**; citing in support **Yudacufski v. Commonwealth, Dep't of Transp.**, 454 A.2d 923, 926 (Pa. 1962). Appellant also challenges the trial court's further reductions, suggesting that they are inconsistent with the remedial purposes of the UTPCPL. Appellant's Brief at 72 (citing in support **Boehm**, 117 A.3d at 336).

Appellant's reliance upon **Yudacufski** is misplaced. In that case, our Supreme Court held that "absent the most compelling circumstances, a judge should follow the decision of a colleague on the same court when based on the same set of facts." **Yudacufski**, 454 A.2d at 926 (concluding that the trial judge's "thoughtful opinion" had "established the law of that judicial district"). However, a judge is not bound by another's decision where it is not supported by an opinion addressing the reasons for that decision. **Kapres v. Heller**, 612 A.2d 987, 991 (Pa. Super. 1992).

Although the trial court in **Boehm** approved an hourly rate of $400 for Attorney Behrend, it offered no explanation for its decision. **See** Petition for the Award of Counsel Fees, Exhibit 4 (**Boehm v. Riversource Life Ins. Co.**, No. GD 01-8289, 02/24/2014 (Lutty, J.)) at p. 3 (unnumbered). Without the benefit of the **Boehm** trial judge's reasoning, the Honorable Alan Hertzberg, the trial judge in this case, was not required to accept Appellant's suggested hourly rate. In contrast here, Judge Hertzberg examined the documentary evidence submitted by the parties and set forth an analysis supporting his decision to reduce Attorney Behrend's hourly rate. **See** Trial Court Opinion at 11-12. Accordingly, we discern no legal error.[17]

---

[17] Moreover, it is not at all clear that the facts relevant to the **Boehm** court's decision are present here. As discussed, *supra*, the court must consider specific factors in granting attorney fees, including the complexity of the issues involved, the amount of labor required, and the amount involved in the controversy. **Boehm**, 117 A.3d at 335. Appellant does not address

*(Footnote Continued Next Page)*

Appellant also suggests that the trial court failed to explain its other reductions to her requested attorney fees. *See* Appellant's Brief at 66. This is simply inaccurate. The trial court explained its decision in detail. *See* Trial Court Order, 12/09/2014 (granting Appellant's petition for attorney fees and noting those factors which guided its decision); Trial Court Opinion at 9-16 (setting forth the court's analysis).

Finally, in a contrary argument, Appellant suggests that the trial court conducted both an "hour-by-hour analysis," as well as an "across-the-board" reduction in hours to reduce the attorney fees awarded, a practice prohibited under certain federal law. *See* Appellant's Brief at 71 (citing ***Bivins v. Wrap It Up, Inc.***, 548 F.3d 1348, 1351-52 (11th Cir. 2008) (precluding such double-discounts of requested hours)). However, Appellant mischaracterizes the trial court's analysis. ***See id.*** (suggesting that the court's reduction of fees from roughly $48,000 to $25,000 was the result of an "across-the-board" cut in hours). To the contrary, the trial court explained in detail that this final reduction was based upon the "the amount

*(Footnote Continued)* _____

these factors in her argument, and her suggestion that the present case involves "the same issue and facts" merely because there are no compelling differences is grossly inadequate. *See* Appellant's Brief at 65. Further, Appellant's bald assertion that the trial court was estopped from deciding counsel's proper hourly rate is waived for failure to develop a proper argument. *See* Pa.R.A.P. 2119(a); *see also* Appellant's Brief at 66 (yet again erroneously citing **Boehm**, which referenced collateral estoppel while discussing the appropriate standard of proof to establish a fraud claim brought under the UTPCPL; **see Boehm**, 117 A.3d at 320 n.4).

involved in the controversy and the benefits resulting to the clients." *See* Trial Court Opinion at 13-14 (quoting *Neal*, 882 A.2d at 1030); *see also Boehm*, 117 A.3d at 335.

Based upon its factual determinations, regarding counsel's hourly rate and the lack of evidentiary support for certain line item fees, as well as its analysis of the factors set forth in *Boehm*, *Sewak*, and *Neal*, *supra*, including consideration of the amount in controversy, we discern no abuse of the trial court's discretion. *Boehm*, 117 A.3d at 335. Accordingly, we affirm its award of attorney fees.

In her fifth and seventh issues, Appellant contends the trial court abused its discretion regarding two instructions given to the jury. According to Appellant, the trial court committed reversible error when it instructed the jury that (1) it could reduce a lump-sum award of future damages to their present value if inflation would not adversely impact the award,; and (2) an insured has no duty to read her policy and may rely on the representations of her agent unless, under the circumstances, it is unreasonable for her not to read the policy. *See* Appellant's Brief at 75-76, 78-82.

We need not address these arguments in detail.

> Our [standard] of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless

there is an omission in the charge which amounts to a fundamental error.  In reviewing a trial court's charge to the jury we must look to the charge in its entirety.   Because this is a question of law, [the scope of] this Court's review is plenary.

***Quinby v. Plumsteadville Family Practice, Inc.***, 907 A.2d 1061, 1069-70 (Pa. 2006) (internal citations and quotations omitted; punctuation modified).

Here, the trial court instructed the jury that "if future inflation could not impact damages under the method you use to calculate the cost of future insurance, you are permitted to discount damages to present value." Notes of Testimony (N.T.), 05/20-23/2014, at 790; ***see also*** Trial Court Opinion at 4 (citing in support ***Helpin***, 10 A.3d at 272). Thereafter, the jury returned a mixed verdict and awarded $5,000 in damages.  Appellant's UTPCPL claim was submitted to the trial judge, who found for Appellant, awarded $5,000 in actual damages, and then doubled the award pursuant to 73 P.S. § 201-9.2.  Following disposition of Appellant's post-trial motions, the trial court selected "the $10,000 non-jury verdict … as the single verdict for this proceeding" and directed judgment to be entered thereon.  Trial Court Order, 12/09/2014, at 2.  Accordingly, as judgment was entered solely on the non-jury verdict in this case, any error in the damages charge to the jury did not control the outcome of this case.[18]

---

[18] Incidentally, Appellant does not assert that the trial court erroneously reduced its actual damages award to present value.  ***See*** Appellant's Pa.R.A.P. 1925(b) Statement at 2; Appellant's Brief at 37-55.

Appellant submitted common law claims to the jury, asserting fraudulent and negligent misrepresentation. Both claims require that a plaintiff establish the element of justifiable reliance. *See Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 836, 840 (Pa. Super. 2005) (citing respectively *Rempel v. Nationwide Life Ins. Co., Inc.*, 323 A.2d 193, 197 (Pa. Super. 1974); *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 7 (Pa. Super. 2004)). Regarding the element of justifiable reliance, the trial court instructed the jury that "an insured may … rely on the representations of his or her insurance agent unless, under the circumstances, it is unreasonable for that insured not to read the policy when it is delivered." N.T. at 782-83; *see also* Trial Court Opinion at 6 (citing in support *Drelles*, 881 A.2d at 840-41). Here, although the jury's verdict was not reduced to judgment, we note that it found in favor of Appellant on her claim of negligent misrepresentation and, thus, *necessarily* found that Appellant had established the element of justifiable reliance. *See Drelles*, 881 A.2d at 836; Jury Verdict, 05/27/2014, at 2. Accordingly, we discern no reversible error.

In her sixth issue, Appellant contends the trial court abused its discretion, as it denied Appellant's motion *in limine*, thus permitting Appellees' damages expert to present a model of damages that was inconsistent with current law. According to Appellant, Appellees' model impermissibly reduces her future lump-sum damages to their present

value.[19]  Appellant's Brief at 77 (citing in support **Boehm**, 117 A.3d at 333-34).

> A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion.  An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.  In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

**Parr v. Ford Motor Co.**, 109 A.3d 682, 690 (Pa. Super. 2014) (internal citations omitted; punctuation modified), *appeal denied*, 123 A.3d 331 (Pa. 2015), *cert. denied*, 136 S.Ct. 557 (2015).

Here, Appellant presented testimony that her actual damages were $29,012.85; Appellees countered, suggesting damages of $7,132.  However, the jury awarded Appellant $5,000.00 in actual damages.  Jury Verdict,

---

[19] It had long been recognized that a lump sum award for future damages could be discounted to their present value. **See, e.g.**, **Chesapeake & Ohio Ry. Co. v. Kelly**, 241 U.S. 485, 489-91 (1916) (recognizing that a monetary award for the deprivation of future benefits could be reduced to present value in order to account for the earning power of money).  However, our Supreme Court later reevaluated this approach, adopting the "total offset method" of calculating compensatory damages in limited circumstances. **See Kaczkowski v. Bolubasz**, 421 A.2d 1027, 1036 (Pa. 1980) (rejecting a reduction in damages to the present value of future lost earnings because "the effect of the future inflation rate will completely offset the interest rate").

05/27/2014, at 3. We do not know how the jury selected this amount, but it is clear that the jury rejected both parties' models. Therefore, we conclude that any evidentiary error was neither harmful nor prejudicial to Appellant.[20] Moreover, the trial court considered and expressly rejected the damages model suggested by Appellees. **See** Trial Court Opinion at 6-8. Accordingly, Appellant suffered no prejudice, and we discern no reversible error. **Parr**.

Notwithstanding the lack of prejudice to Appellant, we observe the following. In **Boehm**, we discerned no reason why the total offset approach to calculating damages would be inappropriate in a case brought under the UTPCPL. **Boehm**, 117 A.3d at 334. Nevertheless, based upon the facts accepted by the trial court and our deferential standard of review, we did not set forth a new rule of law but merely noted the absence of a *contrary rule* and ultimately deferred to the trial court's decision. **Id.**

Our Supreme Court has recognized specifically that "in the absence of inflation, there [is] no economic disagreement with the theory behind discounting future damages awards to the present value." **Helpin**, 10 A.3d at 272. In addition, our Supreme Court has stated that its adoption of the total offset approach was narrow. **Id.** at 274 (expanding the concept of future lost earnings to include future lost profits but stating, "It must be

---

[20] As observed, *supra*, judgment in this matter was entered solely on the non-jury verdict. Trial Court Order, 12/09/2014, at 2. Therefore, for this reason, too, any evidentiary error did not prejudice Appellant.

noted that this Court decided **Kaczkowski** narrowly."). The Court's assertion in **Helpin** is on strong footing:

> This Commonwealth now requires that a damage award be discounted to its present value by using six percent simple interest figure. We do not wish to disturb this requirement in calculating future damages in other contexts. We refrain from attempting to fashion broad general rules as a panacea. The obviously wiser course is to resolve disputes on a case-by-case basis until we develop, through experiences in (an) area, a sound basis for developing overall principles.

**Kaczkowski**, 421 A.2d at 1036 n.21.

In **Boehm**, it is not clear whether any factual dispute was raised regarding the impact of inflation on the premium payments payable into the future. The trial court made no specific finding in that regard but rather adopted the plaintiff's findings expressly and rejected the defendant's expert analysis as "not credible." **Boehm**, 117 A.3d at 314. However, the trial court's factual findings in **Boehm** should not preclude other fact-finders from considering such evidence of the impact of inflation on a lump sum award of future damages.[21]

---

[21] We observe further that counsel for Appellant conceded that inflation would not adversely impact the premiums paid by Appellant.

> THE COURT: So inflation can't do anything with that [i.e., future premiums]. That's what I'm trying to say.

> Mr. BEHREND: Their actuary factored everything in to come up with that dollar amount. That is already factored in. They want to do a double deduction.

*(Footnote Continued Next Page)*

Finally, in her eighth issue, Appellant contends that the trial court erred when it denied her motion to compel discovery related to company-wide financial planning and insurance sales practices. The motion referenced was not litigated in this case.[22] Our law is clear:

> On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction ... one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

**Thompson v. Thompson**, 963 A.2d 474, 475-76 (Pa. Super. 2008); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, this claim is waived.

For the above reasons, we remand for further proceedings limited to Appellant's claim for breach of fiduciary duty. In all other respects, we affirm the trial court.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

THE COURT: Right, so they covered the risk for themselves they believe by doing that, but they say this is guaranteed, we'll cover you no matter what happens. They control that inflation factor.

MR. BEHREND: Yes, you are correct.

N.T. at 38-39.

[22] For a more thorough discussion of the procedural background to this motion, **see Yenchi**, 123 A.3d at 1081.

Judgment vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/16/2016