J-A15010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PIERRETTE DUVLAIRE-STACK AND ROBERT MORTIMER, INDIVIDUALLY AND AS W/H, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT A. WILSON AND OLIVIA L. WILSON, | : | |
| | : | |
| Appellees | : | No. 3518 EDA 2018 |

Appeal from the Order Entered November 15, 2018
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2015-0055693

BEFORE: BENDER, P.J.E., GANTMAN, P.J.E., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED AUGUST 12, 2019**

Appellants, Pierrette Duvlaire-Stack and Robert Mortimer, individually and as wife and husband, appeal from the trial court's November 15, 2018 order granting summary judgment in favor of Appellee, Robert A. Wilson.[1,2] We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Olivia L. Wilson remains in the caption, the record indicates that the parties entered a stipulation on January 9, 2018, dismissing her from the case.

[2] The trial court orally granted summary judgment in favor of Mr. Wilson on November 7, 2018, but did not enter a corresponding order on the docket until November 15, 2018. We have amended the caption accordingly. *See* Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject to the

Although the Honorable Charles B. Burr, II, Senior Judge of the Court of Common Pleas of Delaware County entered the November 15, 2018 order underlying this appeal, the Honorable Barry C. Dozor of the Court of Common Pleas of Delaware County authored the Pa.R.A.P. 1925(a) opinion in this matter, due to Judge Burr's retiring from judicial service. Judge Dozor's Rule 1925(a) opinion sets forth the procedural and factual history of this case as follows:

> [Appellants,] on February 6, 2015[,] filed a [c]omplaint in the Court of Common Pleas of Philadelphia[] County[,] which alleged that[,] on February 7, 2013[,] [Ms.] Duvlaire-Stack was operating a motor vehicle on City Avenue, Township of Lower Merion, Montgomery County, Pennsylvania, when [Mr. Wilson], operating a motor vehicle in the opposite direction, negligently made a left hand turn without yielding the right of way to [Ms. Duvlaire-Stack]. Count I of the [c]omplaint sought damages for [Ms.] Duvlaire-Stack as the operator of the automobile[,] and Count II submitted a claim by [Mr.] Mortimer for loss of consortium. On May 13, 2015, the Philadelphia Court of Common Pleas sustained [Mr. Wilson's] [p]reliminary [o]bjections and transferred jurisdiction to this [c]ourt. [Mr. Wilson] answered the complaint on July 20, 2015. [Mr. Wilson,] in new matter[,] submitted that [Appellants'] claims were barred and/or limited by the Motor Vehicle Financial Responsib[ility] Law, (75 Pa.C.S.[] § 1701, *et seq.*[,]) and/or the Pennsylvania Motor Vehicle No-Fault Insurance Act, (75 Pa.C.S.[] § 1705). On April 18, 2016, this [c]ourt approved [Mr. Wilson's] [p]etition to [t]ransfer the [a]ction to [a]rbitration after [Appellants] failed to respond. Next, on December 7, 2016, this [c]ourt granted [Mr. Wilson's] [m]otion for [p]artial [s]ummary [j]udgment and deemed [Appellants] to be subject to the limited tort option (75 Pa.C.S.[] § 1705) for

Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b).").

purposes of the claims to be asserted in this action.[3]  The [a]rbitration hearing was conducted on October 26, 2017. [Appellants] appealed that decision[,] and trial was assigned to Senior Judge Burr.

The docket[] disclose[s] certain discovery motions and [o]rders entered ... which ultimately resulted in this case being listed for [j]ury trial on a term commencing November 5, 2018.  On November 5, 2018[,] [Mr. Wilson] filed a [m]otion *in* [*l*]*imine* to preclude expert testimony and [the] report of William D. Emper, M.D.[]  [Mr. Wilson] averred that Dr. Emper first examined [Ms.] Duvlaire-Stack on November 14, 2017, which ... was nearly five years after the accident.  [Mr. Wilson] averred that Dr. Emper's report and deposition trial transcript stated that [Ms.] Duvlaire-Stack informed Dr. Emper that the accident occurred "a couple of years prior" to the evaluation and that Dr. Emper did not know the date of the accident.  [Mr. Wilson] submitted that the proposed trial testimony of Dr. Emper failed to establish an unequivocal connection between the accident and the alleged shoulder injury to Ms. Duvlaire-Stack.  [Appellants] answered the motion on November 6, 2018[,] and responded that the testimony of Dr. Emper unequivocally related Ms. Duvlaire-[Stack]'s injury to the motor vehicle accident of February[] 2013.  [Appellants] attached the November 1, 2018 video deposition transcript of Dr. Emper along with a follow-up evaluation report by Tricia M. Beatty, D.O.[,] dated October 11, 2017, conducted at the Rothman Institute[,] where both Dr. Beatty and Dr. Emper were employed.  After full review of the motion, answer, deposition transcript and argument of counsel, Judge Burr entered an [o]rder ... on November 7, 2018, granting the [m]otion *in* [*l*]*imine* and precluding the testimony of Dr. Emper.

---

[3] When choosing car insurance in Pennsylvania, insureds have the option of electing 'limited tort' coverage or 'full tort' coverage. **See** 75 Pa.C.S. § 1705. With the 'limited tort' option, an insured "may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury' as set forth in the policy or unless one of several other exceptions noted in the policy applies."  75 Pa.C.S. § 1705(a)(1)(A). Conversely, with the 'full tort' option, an insured "may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers." 75 Pa.C.S. § 1705(a)(1)(B).

Trial Court Opinion (TCO), 1/20/2019, at 1-3 (internal citations omitted).

Because of the preclusion of Dr. Emper's testimony and Appellants' consequential failure to prove causation, the trial court entered an order granting summary judgment in favor of Mr. Wilson on November 15, 2018. On November 28, 2018, Appellants filed a timely notice of appeal from the order granting summary judgment. The trial court ordered Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and they timely complied.

Presently, Appellants raise a single issue for our review:

Did the lower court err in precluding the testimony of [Appellants'] expert witness and granting summary judgment as a result when the expert's testimony was unequivocal and he opined to a reasonable degree of medical certainty that [Ms. Duvlaire-Stack's] injuries were caused by the motor vehicle accident and she had suffered a serious impairment of bodily function to her right shoulder in said accident and[,] as a result[,] there was a genuine issue of material fact as to whether she had suffered a serious injury entitling [Ms. Duvlaire-Stack] to bring an action for pain and suffering?

Appellants' Brief at 5 (emphasis and unnecessary capitalization omitted).

At the outset, we acknowledge:

A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Dibish v. Ameriprise Financial, Inc.***, 134 A.3d 1079, 1095 (Pa. Super. 2016) (citation omitted). Further:

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the fact-finder. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Id.*** at 1084-85 (citation omitted).

In precluding Dr. Emper's testimony, the trial court initially observed that, "[i]n personal injury proceedings, unequivocal medical testimony is necessary to establish a causal connection between an accident and an injury in the absence of an obvious relationship." TCO at 3 (citing ***Albert v. Alter***, 381 A.2d 459, 470 (Pa. Super. 1977)).[4] It then described the deposition testimony of Dr. Emper as follows:

---

[4] The trial court noted that Appellants "agree with this standard but assert that Dr. Emper's testimony meets that burden[.]" TCO at 3 (citation omitted).

- 5 -

The accident in this proceeding[] occurred on February 7, 2013. Dr. Emper first evaluated [Ms.] Duvlaire-Stack on November 14, 2017. The video deposition of Dr. Emper occurred on November 1, 2018. Dr. Emper initially testified as to his education and professional background. Dr. Emper is a board certified orthopedic surgeon. Dr. Emper is the Chief of Orthopedic Surgery at Bryn Mawr Hospital and teaches at Thomas Jefferson University. Dr. Emper initially responded that all opinions that he would provide at his deposition would be within a reasonable degree of medical certainty and that in his practice, he regularly relies on reports of other physician[s] and medical providers in making his diagnosis and prognosis. Dr. Emper testified that[,] after his initial examination of Ms. Duvlaire-Stack, his treatment plan was to perform surgery for a rotator cuff tear. Dr. Emper testified that he conducted a second surgery due to stiffness in his patient's shoulder in an effort to regain proper motion. Dr. Emper stated that his first visit with Ms. Duvlaire-Stack was on November 14, 2017. The patient informed Dr. Emper at that examination that her injury was the result of an automobile accident. [Appellants'] counsel then requested Dr. Emper to opine as to whether he had formed an opinion as to whether Ms. Duvlaire-Stack suffered a serious injury as a result of the accident. [Mr. Wilson] objected to the question but Dr. Emper responded in the affirmative.

[Mr. Wilson] then proceeded to cross-examination. [Mr. Wilson] initially reviewed the file that Dr. Emper had in his possession in regards to Ms. Duvlaire-Stack's care. Dr. Emper responded that his record included his office notes, his physician assistant's office notes and a record of some visits his patient had with other physicians in his practice. [Mr. Wilson] then inquired as to whether Ms. Duvlaire-Stack told [Dr.] Emper at the first evaluation as to whether she had shoulder pain immediately after the accident. Dr. Emper responded that Ms. Duvlaire-Stack reported that she had pain after the accident, but continued "I don't know how immediate it was, at least I don't have it down in my note there." [Mr. Wilson] then asked if Ms. Duvlaire-Stack had told Dr. Emper that the accident had occurred a couple of years before she came to the doctor's office[.] Dr. Emper responded in the affirmative. The video transcript then provides[:]

> [Mr. Wilson's counsel]: Do you know when this accident happened?
>
> [Dr. Emper]: I don't have a date down, no.

- 6 -

[Mr. Wilson's counsel]: So as we sit here right now, are you certain when this occurred?

[Dr. Emper]: I'm sorry?

[Mr. Wilson's counsel]: The accident that brings us here, do you know when it occurred?

[Dr. Emper]: No.

[Mr. Wilson's counsel]: Would knowing the date of an accident be important to you in determining whether or not an injury is from a certain event that is being claimed?

[Dr. Emper]: I think it would be relevant, yeah.

[Mr. Wilson's counsel]: And according to your report, the only documents you reviewed again, or in your earlier testimony; is the paperwork from anyone she saw here at Rothman, correct?

[Dr. Emper]: Yes.

On redirect examination, [Appellants'] counsel introduced Dr. Beatty's[] October 11, 2017 follow[-]up evaluation report and asked Dr. Emper if the report indicated the date of the accident. Dr. Emper responded in the affirmative and identified February[] 2013 as the date of the accident.[5]

*Id.* at 3-5 (internal citations omitted).

After this thorough discussion of Dr. Emper's deposition testimony, the trial court explained that "[Appellants'] medical expert could not identify the exact date of the accident nor the date when shoulder pain first surfaced after the accident." *Id.* at 5. Further, the trial court discerned that "[t]he medical records and testimony of Dr. Emper at his video deposition failed to contain or review any of Ms. Duvlaire-Stack's medical history or shoulder

---

[5] However, when Appellants' counsel asked if Dr. Emper remembered reviewing the October 11, 2017 report, Dr. Emper testified, "I may have in this instance, but I don't recall reviewing it." N.T., 11/1/2018, at 30.

- 7 -

diagnosis/treatment from the February 7, 2013 accident to April[] 2017 when she first reported to the Rothman Institute." *Id.* at 5-6. Consequently, it concluded that Dr. Emper's testimony "failed to establish unequivocal causation between the accident and the diagnosis." *Id.* at 5.

Appellants do not dispute that unequivocal medical testimony is necessary to establish causation in this case. Appellants' Brief at 14.[6] However, they argue that "Dr. Emper testified unequivocally that the injury was caused by the motor vehicle accident. That he was unsure of the date the accident occurred in no way affects the opinion as to causation." *Id.* Appellants contend that "[t]here is absolutely no evidence that there was any other precipitating event and no testimony as to whether the date of the accident alone was an important factor in determining causation." *Id.* at 15. They assert that, "[w]hile Dr. Emper agreed the date of the accident was relevant, he never testified it was the determative [*sic*] factor in determining causation. When reminded of the date of the accident as it appeared in the medical records upon which he relied, Dr. Emper rendered unequivocal testimony as to causation." *Id.*

> We reject Appellants' argument. Mr. Wilson persuasively asserts:
>
> In this matter, Dr. Emper's testimony is vague and unfocused. He attempts to relate [Ms. Duvlaire-Stack's] alleged shoulder injury and surgery of January 31, 2018[,] to the motor vehicle accident of February 7, 2013. However, he has no knowledge of the date of the accident or her complaints in the years between the

---

[6] As the parties agree that this standard applies, we will employ it. Consequently, we do not delve into it further. **See** **also** footnote 4, **supra.**

accident and when he first saw her. His opinion is contrary to the evidence in the record, and as such, Dr. Emper's opinion does not have an adequate foundation in fact.

[Ms. Duvlaire-Stack] filed a lawsuit in this case in 2015, two years after the accident. In her [c]omplaint, she makes no mention of a shoulder injury. [Ms. Duvlaire-Stack] testified at deposition over three years after the accident. When she was asked about her injuries from the accident[,] she made no mention [of] her right shoulder. Her medical records immediately following the accident make no mention of shoulder issues.[7]

Dr. Emper's only knowledge of the motor vehicle accident was [Ms. Duvlaire-Stack's] representations that she had been in a motor vehicle accident and had shoulder pain "for the last few years." Dr. Emper saw no medical records from any provider other than those of his colleagues from the Rothman Institute. He admitted he did not know when the accident occurred, and he conceded that knowing the date of the accident would be relevant in forming his opinion. He admitted he did not know when [Ms. Duvlaire-Stack] first had shoulder pain following the accident. Notably, he stated acute shoulder injuries do not start manifesting pain years after an accident.[8] He testified he never saw any treatment records from the emergency room or from [Medical Rehabilitation Centers of Pennsylvania] where [Ms. Duvlaire-Stack] underwent therapy in the months following the accident. He did not read [Ms. Duvlaire-Stack's] deposition testimony from 2016[,] and was unaware of her complaints from the accident at that time. Dr. Emper admitted all of the above[-]listed information would have been helpful to him in coming to his conclusions.

*Id.* at 12-13.

We agree with Mr. Wilson and the trial court that Dr. Emper's testimony should be precluded. His medical testimony did not demonstrate,

---

[7] Appellants do not specifically address nor counter these claims in their reply brief.

[8] Dr. Emper also acknowledged that a shoulder tear can be a "degenerative condition[.]" N.T. at 25.

- 9 -

unequivocally, a causal connection between the accident and Ms. Duvlaire-Stack's right shoulder injury. Dr. Emper admitted that his opinion was only as good as the information he relied on to form it, that he lacked knowledge of various relevant medical records and facts, and that such information would have been useful in formulating his opinion. **See** N.T. at 25-28.

We also keep in mind that a trial court's decision to grant a motion *in limine* is subject to an abuse of discretion standard of review, and Appellants have not convinced us that the trial court abused its discretion here. **See Dibish**, **supra.** The crux of Appellants' argument is that Dr. Emper did not know the exact date of the accident, and that this lapse does not undermine his opinion as to causation. However, aside from not knowing when the accident occurred, the record shows Dr. Emper had *no* knowledge of Ms. Duvlaire-Stack's condition and treatment between the time of the accident in 2013 and April of 2017. Appellants do not account for this unawareness, nor explain — by discussing relevant legal authority — why it does not affect Dr. Emper's ability to provide unequivocal medical testimony as to causation. We will not develop arguments on their behalf. **See Coulter v. Ramsden**, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) ("[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. … [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.")

(internal citations, quotation marks, and brackets omitted). Based on our review of the record, it appears to us that Dr. Emper's only basis for believing that the accident caused Ms. Duvlaire-Stack's shoulder injury was because she suggested it did, not because he applied his medical expertise to her medical history to establish a causal connection. *See Albert*, 381 A.2d at 470 ("Pennsylvania case law is clear that in a personal injury case when there is no obvious causal relationship between the accident and the injury, unequivocal medical testimony is necessary to establish the causal connection."). Accordingly, we conclude that the trial court did not abuse its discretion in granting Mr. Wilson's motion *in limine*, and consequently entering summary judgment in his favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/12/19</u>