J-A08021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EARL JOHN DWYER AND CHRISTINE DWYER, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 519 WDA 2021 |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY, JAMES E. ANDERSON, JR., AND DUANE DANIELS[1] | : | |

Appeal from the Judgment Entered April 26, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD01-006612

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED:  July 8, 2022**

Earl John Dwyer and Christine Dwyer (h/w) (collectively, Plaintiffs) appeal from the judgment, entered in their favor, on jury and non-jury verdicts, in the amount of $244,172.57.[2]  After review, we affirm.

---

[1] On March 19, 2019, the parties stipulated and the court entered an order decreeing that all claims against Defendant Duane Daniels were withdrawn from the instant lawsuit.

[2] Broken down, Plaintiffs were awarded a total of $244,172.57— $75,000.00 in punitive damages, $45,569.81, plus interest, on their Unfair Trade Practices and Consumer Protection Law (UTPCPL) claim, and $123,602.76 in attorneys' fees and costs.

In August 1985, Plaintiffs purchased a $50,000.00 flexible, premium adjustable whole life insurance policy[3] (Policy) from Defendant, James Anderson. Anderson, an American Express Financial Advisor (AEFA)[4] and IDS Life Insurance sales agent, completed the policy application and sold the policy to Plaintiffs after being trained by Ameriprise. The parties used Ameriprise forms in completing the insurance application. Plaintiffs' premium was set at $432/year, or $108/quarterly, with minimum monthly payments of $35.13. The maturity date of the Policy was August 14, 2051, Earl Dwyer's 95th birthday. The Policy had a $50,000 death benefit, with a guaranteed minimum interest rate of 4.5% that was applied to the cash value of Policy; at the time the Policy was issued, an interest rate of 9.5% was applied. Anderson allegedly led Plaintiffs to believe that their quarterly payments would remain the same for the life of the Policy, no matter how interest rates varied.

Universal Life policies permit the insured to adjust his or her premiums and death benefits if the cash value is insufficient to cover the cost of the policy, as these polices earn interest rates that vary depending on what the insurance company is able to earn on the market. During the life of the current Policy, the interest rate varied from 4.5% to 9.5%. Assuming that Plaintiffs

---

[3] These policies are known as "universal life" policies.

[4] AEFA was renamed Riversource Life Insurance Company. IDS Financial and IDS Life were purchased by AEFA. IDS's and AEFA's names were ultimately changed to Ameriprise, Inc.

continued to pay their original premiums quarterly, the Policy would have lapsed for insufficient funds in 2020, when Earl Dwyer was 64 years old.

On April 4, 2001, Plaintiffs instituted the underlying action against Appellees (Defendants) by filing a praecipe for a writ of summons. On August 23, 2007, Plaintiffs filed a complaint for negligent misrepresentation (Count I), fraudulent misrepresentation (Count II), violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count III), breach of fiduciary duty (Count IV), and negligent supervision (Count V). Plaintiffs' claims were based on their allegation that Anderson led them to believe that their quarterly payment would remain the same for the life of the policy. *See* Plaintiffs' Complaint, 8/23/07, at ¶ 69 (alleging Defendants employed "deceptive sales practices" with regard to persons who purchased universal life insurance policies "sold by American Express and IDS agents using illustrations and policy information representing a planned premium to be paid by the policy holder, without disclosing that the planned premium was less than the premium amount necessary to keep the policy in force for the duration of the contract"). Plaintiffs sought damages in the amount of $44,570.50, representing the return of their total premium payments of $14,580.00,[5] plus 6% interest.

---

[5] At the time of trial, Plaintiffs had paid a total of $14,580.00 in premiums over the approximately 35 years that the Policy had been in effect.

Prior to trial, the parties agreed that the issue of liability for the negligent and fraudulent misrepresentation claims and the question of whether Defendants' conduct was outrageous, for purposes of awarding punitive damages, would be submitted to the jury (Phase I/Liability Trial). Then, assuming liability was found by the jury, the trial court would determine compensatory (return of premium) damages, including whether there should be a set-off for the benefit of the coverage Plaintiffs received over the years that the Policy was in effect. If the jury determined that Defendants' conduct was outrageous, the jury would be given evidence of Defendants' net worth to aid them in determining what, if any, amount of punitive damages should be awarded (Phase II/Punitive Damages Trial). Finally, based on the evidence presented at the Liability Trial, the trial court would render a verdict on Plaintiffs' UTPCPL claim.

A jury trial commenced on March 19, 2019. On March 25, 2019, the jury returned a verdict[6] in the Liability Phase in Plaintiffs' favor on claims of

---

[6] The jury's verdict slip contained the following questions, the first two of which it answered in the affirmative:

Question 1:

Do you find that the Plaintiffs have proven by clear and convincing evidence that Defendants made a fraudulent misrepresentation of material fact to Plaintiffs upon which Plaintiffs justifiably relied to their financial harm?

Question 2:

fraudulent misrepresentation and negligent misrepresentation. Specifically, the jury found that Defendants made intentional, fraudulent misrepresentations in the process of the sale of the Policy and that Plaintiffs justifiably relied upon Defendants' misrepresentations to their financial harm.

The jury also found that Defendants acted outrageously, thus warranting consideration of punitive damages. Prior to instructing the jury on punitive damages, the court, without objection, precluded Plaintiffs' counsel from arguing anything in closing statements related to the design of the Policy. ***See*** N.T. Jury Trial (Phase II), 3/25/21, at 1130-33.[7] In addition, the court instructed the jury to consider only the conduct of Anderson[8] when it

_____

> Do you find that Plaintiffs have proven by a preponderance of the evidence that Defendants made a negligent misrepresentation of material fact to Plaintiffs upon which Plaintiffs justifiably relied to their financial harm?

If you answered "Yes" to either Question 1 or Question 2, or both, proceed to Question 3.

Question [3]:

State the amount of punitive damages, if any, you award to Plaintiffs.

July Verdict, 8/17/22.

[7] N.T. Jury Trial (Phase II), 3/26/21, at 1100 ("I'm not disputing that. . . . But I don't want to hear argument again about the [`]corporation wrote this policy. The corporation sold this policy.['] That is not relevant. What's relevant, again, i[s] fraudulent and negligent misrepresentation by Mr. Anderson in the sale of this insurance policy for which the corporation is responsible through vicarious liability.").

[8] The court also issued a jury instruction to that effect.

determined the amount of punitive damages. The court also permitted Plaintiffs to introduce evidence, in the form of Ameriprise's and Riversource's annual reports/statements, to determine corporate net worth[9] for the calculation of punitive damages. Ultimately, the jury awarded Plaintiffs $75,000.00 in punitive damages.

Nine months later, in December 2019, the trial court ruled in favor of Plaintiffs on the UTPCPL[10] claim, awarding them $45,569.81, plus interest, in compensatory damages.[11] The court did not include any "set-off" amount in Plaintiffs' award for Defendants providing insurance coverage (8/95-date of verdict) or for the Policy's cash value. Finally, the trial court declined to award Plaintiffs remedial treble damages under the UTPCPL.

In January 2020, Plaintiffs submitted a request for attorneys' fees and costs under the UTPCPL, in the amount of $170,383.76, based on an hourly rate of $630.00 for Kenneth R. Behrend, Esquire, and $525.00 for his associate, Kevin Miller, Esquire. *See* 73 P.S. § 201-9.2(a). After the parties' briefed and argued the issue of counsel fees, the court applied the hourly rate of $550.00 for Attorney Behrend and $400.00 for Attorney Miller, ultimately

---

[9] The documents showed that Ameriprise had a capital surplus of $3,280,143,758.00.

[10] 73 P.S. 201-1-202-9.2.

[11] To recover damages under the UTPCPL, a plaintiff must demonstrate "an ascertainable loss *as a result of* the defendant's prohibited action." ***Richards v. Ameriprise Fin. Inc.***, 152 A.3d 1027, 1034 (Pa. Super. 2016) (emphasis in original) (***Richards I***).

awarding Plaintiff $102,616.00 in attorneys' fees attributable to the Behrend Law Group, $18,040.00 in attorneys' fees attributable to Keefe Law, LLC, and $2,946.76 in costs outlaid by the Behrend Law Group—for a total award of attorneys' fees and costs in the amount of $123,175.57.

On August 26, 2020, Plaintiffs filed a motion for post-trial relief; the court denied the motion on April 15, 2021. Thereafter, Plaintiffs praecipied to have the jury's verdict reduced to judgment. On April 26, 2021, the court entered judgment against Defendants in the amount of $244,172.57. Plaintiffs filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Plaintiffs raise the following issues for our consideration:

(1) The trial court erred because it ignored entitlement to damages where the court recognized the UTPCPL was intentionally violated, but refused to supplement the common law penal remedy with the statutory remedial remedy of treble damages.

(2) The trial court erred in concluding that the hourly market rate for attorneys in fee-shifting cases in Allegheny County had decreased in 2021, from that established for the county in 2018, where no compelling circumstances exist to support such a finding.

(3) The trial court erred in precluding, during the damages phase of trial, any argument or evidence related to punitive damages based upon Ameriprise's direct liability where: (1) the amount awarded in punitive damages is insufficient to deter defendant corporations and other similarly situated corporations from future repeated misconduct; (2) the jury found Ameriprise's conduct to be outrageous; (3) and Plaintiffs introduced evidence and made argument about the direct acts of Ameriprise in the liability phase of trial and Defendants failed to object.

- 7 -

Appellants' Brief, at 6 (reworded for clarity).

Plaintiffs first contend that the trial court[12] erred in failing to award treble damages under the UTPCPL where Defendants were found to have conducted fraudulent sales under the statute and where the award of punitive damages was not sufficient punishment for Defendants' conduct. We disagree.

"Aimed at preventing consumer fraud, the UTPCPL enables an individual to institute a private action to recover damages for any ascertainable loss caused by unfair or deceptive acts or business practices." *Lesoon v. Metro. Life Ins. Co.*, 898 A.2d 620, 628 (Pa. Super. 2006). In addition to recovering "actual" damages under the UTPCPL,

> [t]he court may, in its discretion, award [a plaintiff] up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the

---

[12] An appellate court will review a trial court's decision, in a non-jury trial:

> to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in the light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.

*Richards v. Ameriprise Fin., Inc.*, 217 A.3d 854, 862 (Pa. Super. 2019) (*Richards II*).

plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa.C.S.A. § 201-9.2(a). "These damages, although designed, in part, for other more remedial purposes, do contain a deterrent, punitive element." *Meyer v. Cmty. College of Beaver County*, 93 A.3d 806, 815 (Pa. 2014). *See also Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007) (noting treble damage provisions of UTPCPL are "a hybrid" with both punitive and remedial aspects) (internal quotations and citations omitted).

A trial court is "given broad discretion to determine whether to award treble damages" where the UTPCPL has been violated. *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639-40 (Pa. Super. 1997). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires . . . manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* In *Schwartz*, *supra*, our Supreme Court stated:

> [T]he statute, on its plain terms, does not provide any standard pursuant to which a trial court may award treble damages. In construing its terms, we find particularly relevant the principles of statutory construction authorizing consideration of the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation. *See* 1 Pa.C.S. § 1921(c).

*Schwartz*, *supra* at 898.

Here, the jury found that Defendants made fraudulent and negligent misrepresentations to Plaintiffs in the process of selling them the Policy. While the court declined to treble the actual damages in the case, it awarded attorneys' fees in excess of $123,000.00. In addition, the jury also awarded

- 9 -

Plaintiffs a significant amount in punitive damages. The trial court found that the overall award of damages, in addition to attorneys' fees and costs, would sufficiently punish and deter Defendants from committing similar conduct in the future. Specifically, the court concluded:

> [T]he compensatory award of the return of the entire premiums paid, without set-off, at a rate of 6% interest[,] the $75,000 in punitive damages awarded by the jury[,] and attorneys' fees that will subsequently be awarded [were] sufficient to compensate the Plaintiffs for the losses caused by the Defendants, and to punish and deter the Defendants from such similar future conduct.

Order, 12/18/19.

In ***Dibish v. Ameriprise Fin., Inc.***, 134 A.3d 1079 (Pa. Super. 2016), the plaintiff, who purchased a whole life insurance policy, was led to believe that if she paid a set annual premium, she was guaranteed a $50,000 death benefit until age ninety-nine. ***Id.*** at 1082. When plaintiff lived beyond her life expectancy and was forced either to pay additional premiums or reduce the policy death benefit due to insufficient funds, she commenced litigation against Ameriprise and her insurance sales agent raising similar common law claims of negligent and fraudulent misrepresentation and statutory violations of the UTPCPL. ***Id***. at 1083. Following trial, a judge ruled in favor of the plaintiff on the UPTCPL claim, determined plaintiff's actual damages to be $5,000, and then doubled the award to $10,000 pursuant to section 201-9.2 of the UTPCPL. ***Id.*** at 1084. The court also awarded plaintiff $ 25,726.37 in attorneys' fees and costs. ***Id.*** On appeal, plaintiff raised the claim that the

trial court abused its discretion by declining to award treble damages under the UTPCPL. *Id.* On appeal, a panel of our Court astutely observed:

> The UTPCPL affords the trial court discretion to "*award up to three times* the actual damages sustained." 73 P.S. § 201-9.2(a) (emphasis added). Thus, **there is no obligation for a trial court to award treble damages and, quite to the contrary of [plaintiff]'s position, our Supreme Court has recognized that [a] trial court[']s discretion to award treble damages must be tempered by the facts demonstrated.**

*Id.* at 1091 (emphasis added and in original).

Based upon the facts of this case and **Dibish**, we conclude that the trial court's order denying Plaintiffs' request for treble damages was grounded in rationality and does not "do violence to the intent and purpose of the []UTPCPL[]." Appellants' Brief, at 6; **see also Schwartz**, **supra** at 898 ("Appellate courts should review such decisions 'for rationality, akin to appellate review of the discretionary aspect of equitable awards.'"). As the trial judge noted, Plaintiffs were adequately compensated for their losses and the total award sufficiently punishes and deters Defendants from engaging in similar conduct in the future. Accordingly, we find no abuse of discretion. **Johnson**, **supra**.

Plaintiffs next argue that the trial court erred in determining the hourly market rate for attorneys in the case. Specifically, Plaintiffs believe that the court abused its discretion when it did not adopt their proposed hourly rates of $630 and $525 for Attorneys Behrend and Miller that were based on hourly rates used by another Allegheny County judge in another case. Plaintiffs claim that their proposed rates are consistent with counsels' exhibit recording "the

hours [Attorneys Behrend and Miller] spent [and] the items worked upon" in this case. Plaintiffs' Petition for Counsel Fees and Costs, 1/23/20, at 2.

Under the UPTCPL, a court may award costs and reasonable attorneys' fees to a successful plaintiff. *See* 73 P.S. 201.9-2(a). "[T]he determination of a reasonable fee is an inherently case-specific endeavor." *Richards II*, *supra* at 870.

Instantly, the trial court noted that

Attorney Behrend has spent more than twenty years litigating a group of cases that involve the same defendant, with similarly situated plaintiffs, similar factual allegations[,] and similar tort/statutory claims. He has been awarded hourly rates that vary, and sometimes he has been denied attorneys' fees altogether. He has been awarded a lower rate *after* he was awarded a higher rate.

Trial Court Opinion, 8/26/21, at 3-4. In considering the appropriate hourly rate for Plaintiffs' attorneys, the court looked to a 2017-2018 United States Consumer Law Attorney Fee Survey Report listing a Pittsburgh attorney with Attorney Behrend's professional experience charging an hourly rate of $400/hour and a New York or Chicago attorney with the same experience with an hourly rate of $500/$531, respectively—all less than what the trial court deemed Attorney Behrend's hourly rate to be ($550) in the instant case. In addition, because Attorney Behrend represented similarly situated plaintiffs suing Ameriprise in 28 other cases, the skill, time, and labor he had to expend on this case, with identical issues, was significantly minimized. Finally, the court discounted "additional hours [listed in Plaintiffs' amended invoice] relating to matters [the court] believed were unnecessary, duplicitous [sic],

or not related to the UTPCPL claim." Trial Court Order, 8/13/20, at ¶4. *See Krishnan v. Cutler Group, Inc.*, 171 A.3d 856, 871 (Pa. Super. 2017) ("[I]n awarding attorney[s'] fees under the UTPCPL[, a court] must . . . eliminate from the award of attorney[s'] fees the efforts of counsel to recover on non-UTPCPL theories.") (citation omitted).

Here, where there is record support for the court's hourly rates and the rates were more than reasonable, we find no abuse of discretion. *See Hoy v. Angelone*, 720 A.2d, 745, 752 (Pa. 1998) ("We will not find an abuse of discretion in the award of counsel fees 'merely because we might have reached a different conclusion.'"); *see also Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 790 (Pa. Super. 2006) (under UTPCPL's fee-shifting provisions, attorneys' fees determined by "lodestar approach," which is product of "the number of hours reasonably expended on the litigation times a *reasonable hourly rate*") (emphasis added).

In their final claim, Plaintiffs assert that the trial court erred in precluding, during the damages phase of trial, any evidence related to punitive damages based upon Ameriprise's direct liability. Plaintiffs also aver that the punitive damages award was insufficient "to punish and deter [D]efendants, and others similarly situated, from repeating outrageous conduct" where the $75,000 award is disproportionate to Ameriprise's more than one-billion-dollar net worth. Appellant's Brief, at 7.

"Assessment of punitive damages [is] proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful,

- 13 -

wanton[,] or reckless conduct, and are awarded to punish that person for such conduct." ***SHV Coal, Inc. v. Continental Grain Co.***, 587 A.2d 702, 704 (Pa. 1991) (citations omitted). "The determination of whether a person's actions arise [to the level of] to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused." ***Id.*** at 705. In Pennsylvania, it has long been held that the amount of punitive damages must bear a reasonable relationship to the award of compensatory damages. ***Hughes v. Babcock***, 37 A.2d 551 (Pa. 1944).

Immediately before Phase II of trial (punitive damages), Defendants argued that Plaintiffs' cause of action related solely to the conduct of Anderson and, thus, damages should only be assessed with regard to the representations Anderson made to Plaintiffs prior to entering into the Policy. Specifically, Defendants' counsel argued:

> The point says you must decide whether punitive damages are to be assessed. It also says against each Defendant by that Defendant[']s conduct alone. But again, I don't think that, for the reasons we have already talked about, applies here.
>
> **I think the jury needs to understand that the only conduct at issue is that of Mr. Anderson, and so they can award punitive damages against the company for his actions, but it has to be based on his actions.**

N.T. Jury Trial (Phase II), 3/25/21, at 1096 (emphasis added); ***id.***, 3/26/21, at 1105 (defense counsel stating "[T]here can only be damages for the conduct that is subject to the underlying cause of action, which here, as Your Honor has already recognized and has charged, is the conduct of Mr.

Anderson."); *id.*, at 1099-1100 (defense counsel noting, "But this kind of harkens back to a concern I had in the primary case, which is that there is no evidence in this case, once again, of a fraudulent misrepresentation, negligent misrepresentation, [or] fraud in the execution about the corporation's conduct. I understand they're responsible for Mr. Anderson's conduct.").

Plaintiffs incorrectly assert that the jury found Ameriprise directly liable and that they were "precluded from arguing that the jury should consider Ameriprise's direct liability in determining the amount of punitive damages to be awarded." Appellants' Brief, at 45. The jury's verdict simply does not state that it found Ameriprise directly liable; to say otherwise is to invite speculation into the jury's deliberative processes. Moreover, in calculating punitive damages, the court, over the objection of Defendants, allowed Plaintiffs to introduce the 2018 Annual Report from Ameriprise and the Annual Report of Riversource to aid in the jury's assessment of corporate net worth. *See id.* at 1104. *See also Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 640 (Pa. Super. 2019) (when punitive damages at issue in case, jury must consider not only character of act underlying claim and harm suffered by plaintiff, but also wealth of defendant; net worth, which signifies remainder after deduction of liabilities from assets, is valid measure of defendant's wealth).

In his closing argument, Plaintiffs' counsel argued that the punitive damages award that the jury renders should "make[] the company stand up and realize action has to be taken" and that "we have a corporation that,

coming out of the annual statements . . . ha[s] a [capital] surplus [t]hat's $3,280,143,785.[00]." *Id.* at 1177-78.  Plaintiff further stated in closing:

> So what are we talking about here?  The focal point is Mr. Anderson's conduct, yes.  But how did he get to that conduct, and what is his inner relationship with the company?  So, when the Judge is instructing us on the law **he will be talking about Defendants plural, not solely Mr. Anderson.  This isn't something about what Mr. Anderson's money may or may not be.  What's on the line here is a discussion about the corporation and its behaviors through its agent Mr. Anderson.**  The goals are of punishment and deterrence.  Two parts.  Punishment for what actually occurred and how it was handled.  **Then deterrence of the company itself for future conduct and any other so situated individuals or companies.**

*Id.* at 1173-74 (emphasis added).

Instantly, the trial judge charged the jury on punitive damages as follows:

> So, under the law in Pennsylvania punitive damages may be awarded only if the Defendant's conduct was malicious, wanton, willful, oppressive[,] or exhibited a reckless indifference to the rights of others.
>
> If you determine that an award of punitive damages is appropriate, in order to determine the amount of such damages you may consider any or all of the following factors.
>
> > No. 1.  The character of the Defendant's act.  If you will recall from yesterday we had the act involved Mr. Anderson's conduct at or around the time of the sale of the policy.
> >
> > 2.  The nature or extent of the harm to the Plaintiffs that the **Defendants** caused or intended to cause.
> >
> > 3. The wealth of the **Defendants** insofar as it is relevant in fixing an amount that will punish them and deter them and others from like conduct in the future.

So those are the three elements to consider.

> The amount of punitive damages awarded must not be the result of passion or prejudice against the **Defendants** on the part of the jury. The sole purpose of punitive damages is to punish any outrageous conduct you find to have been engaged in by the **Defendants** and to deter **Defendants** and others from similar acts.

*Id.* at 1180-82. Neither attorney objected to this charge. *Id.* at 1182 ("[The Court:] So with that[,] anything else, counsel, before we send the jury out? [Counsel for Defendants:] No, Your Honor. Thank you. [Counsel for Plaintiffs:] No, Your Honor, Thank you."). The court further instructed the jury that, "A principal is legally responsible for an employee's wrongful conduct. In this case[,] Ameriprise, the Ameriprise Defendants, admit that James Anderson was its employee and that James Anderson's conduct was part of his job." *Id.* at 1064.

Here, the jury's punitive damages' award bore a reasonable relationship (60%) to Plaintiffs' compensatory damages. *Hughes*, *supra*. Moreover, the jury properly considered the character of Anderson's conduct, the harm Plaintiffs suffered, and the net worth of the corporate defendant before coming to its damages' award. *Carlini*, *supra*. Under such facts, we conclude that the court correctly determined that a new trial was not warranted on the issue of punitive damages where the amount of any such award was within the factfinder's discretion. There was no abuse of that discretion. *SHV Coal, Inc.*, *supra*.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/8/2022